UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DIXIE BOYS BASEBALL, INC. | CIVIL ACTION 12-0760 |
| VERSUS | U.S. DISTRICT JUDGE DEE DRELL |
| DIXIE YOUTH BASEBALL, INC. | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

**REPORT AND RECOMMENDATION**
**and ORDER TO STRIKE**

Before the court is plaintiff's motion to remand, **Doc. 9**, referred to me by the district

judge for report and recommendation.

Plaintiff (Dixie Boys) sues the defendant (Dixie Youth) for injunctive relief and

declaratory judgment, as  a result of a breach of contract.  According to plaintiff, Dixie Boys was

incorporated in Rapides Parish, Louisiana in 1957 and is primarily a youth baseball program for

boys 13 years old and older. Approximately 32,000 boys play in its leagues which exist in

Louisiana, Alabama, Arkansas, Florida, Georgia, Mississippi, North Carolina, South Carolina,

Tennessee, Texas, and Virginia. In 1961, representatives of Little Boys Baseball, Inc., an

organization for boys 12 and under, asked Dixie Boys for permission to use its name, which was

denied. In 1962, it asked for permission to use the Dixie Youth name, which Dixie Boys granted

pursuant to written . The agreement specifically provided that the name could be used only for

baseball programs geared toward the 12 and under age bracket, not the 13 and over bracket to

which Dixie Boys catered.

1

Plaintiff alleges that in November 2010, Dixie Boys became aware that Dixie Youth planned to begin baseball programs in Texas and Virginia for boys age 13 and up. Plaintiff asserts that such attempts violate the terms of its consent to use agreement with Dixie Youth. Plaintiff filed suit in Rapides Parish seeking declaratory and injunctive relief as a result of the alleged breach of contract. Defendant timely removed the case to this court alleging that jurisdiction exists based on diversity, federal question jurisdiction exists because the action calls into question plaintiff's registered trademark, and based on freestanding "supplemental jurisdiction".

Plaintiff filed the instant motion to remand asserting that, although there exists complete diversity between the parties, the jurisdictional limit of $75,000 is not met, the federal court does not have exclusive jurisdiction over trademark infringement claims and there is no underlying case to which supplemental jurisdiction could attach.

<u>Applicable law</u>

It is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists.  However, the Fifth Circuit has applied different standards of proof, depending upon whether the complaint prays for a specific amount of damages.  <u>Allen v R & H Oil and Gas Co.</u>, 63 F.3d 1326 (5th Cir. 1995).  Where the complaint alleges entitlement to damages which exceed the jurisdictional limits of the court, now $75,000, the court may refuse jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount.  <u>St. Paul Mercury Indemnity Co. v. Red Cab. Co.</u>, 58 S. Ct. 586 (1938).  Where a specific amount of damages is not set forth, the legal certainty test is not applicable.  Instead, the removing defendant must prove by a preponderance of the evidence that

2

the amount in controversy exceeds $75,000.  De Aguilar v. Boeing Co., 11 F.3d 55 (5th Cir. 1993) (DeAguilar I).

In Louisiana, plaintiffs are prohibited by state law from specifying the amount of damages sought, except in certain circumstances. La. Code Civ. P., Art. 893.  Therefore, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. De Aguilar I, supra.  The defendant may make this showing in either of two ways: (1) by demonstrating that it is facially apparent from the complaint that the claims are likely above $75,000, or (2) by setting forth the facts in controversy--preferably in the removal petition, but sometimes by affidavit--that support a finding of the requisite amount.  Allen, 63 F.3d  at 1335. See Luckett v. Delta Airlines, Inc. 171 F.3d 295 (5th Cir. 1999). Plaintiff may, however,  cite to a state statute, for example, that prohibits recovery of more than the amount sought.  De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. 1995) (De Aguilar II). Otherwise, a litigant who wants to prevent removal must file a binding stipulation or affidavit with her petition. Id.

Removal may not be based upon conclusory allegations and the jurisdictional facts that support removal must be judged at the time of removal.

Once jurisdiction is established, subsequent events that reduce the amount in controversy to less than $75,000 generally do not divest the court of diversity jurisdiction. St. Paul Mercury, supra.  While post removal affidavits may be considered in determining the amount in controversy at the time of removal, such affidavits or stipulations and amendments may be considered only if the basis for jurisdiction is ambiguous, that is, not facially apparent, at the time of removal.  Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880 (5th Cir. 2000); Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimica de

Columbia S. A., 988 F.2d 559, 565 (5th Cir. 1993), cert. den., 114 S. Ct. 685 (1994); St. Paul Mercury, supra.  See also,  (De Aguilar II). Any post petition affidavits or stipulations are allowable only if relevant to the time of removal.  Allen, 63 F.3d  at 1335.

As Magistrate Judge Wilson stated in Carrier v. Veolia, 2007 WL 2350258 (W. D. La. 2007), no amounts which may be asserted in valid defense of all or part of a claim may be used to reduce the amount in controversy in order to defeat diversity jurisdiction. The issue is not how much plaintiff's case may really be worth when all is said and done but, rather, what is the amount placed in dispute by the plaintiff.

Demands for equitable relief are assessed, for jurisdictional purposes, by "the value of the right to be protected or the extent of the injury to be prevented." Hartford v. Lou-Con, Inc., 293 F.3d 908 (5th Cir. 2002), that is, by the value of the object of the litigation Hunt v. Washington State Apple, 97 S. Ct. 2434 (1977); Garcia v. Koch Oil, 351 F.3d 636 (5th Cir. 2003).. Further, the amount in controversy is determined from the perspective of the plaintiff, and the proper measure is the benefit to the plaintiff, not the cost to the defendant." Garcia, supra, at 640, fn 4.

<u>Analysis</u>

Because the supplemental jurisdiction basis for jurisdiction was not briefed by defendant, it is deemed abandoned.[1]

Also, removal based on 28 U.S.C. §1338 and The Lanham Act[2] was improper. As mover succinctly suggests, the mere existence of a trademark does not create federal question

---

[1]  In any event the argument would be unavailing to defendant. This court has no freestanding supplemental jurisdiction. See Rivet v. Regions Bank, 118 S. Ct. 921 (1998).

[2]  15 U.S.C. §1501 *et seq*.

4

jurisdiction. Here, plaintiff's "well-pleaded complaint"[3] asserts only state law causes of action.

The trademark issue is, at most, only tangentially related to this litigation to enforce compliance

with an agreement. See Johnny's Pizza House, Inc., v. G & H Properties, Inc., 524 F. Supp 495,

497 (WDLA, 1981). Defendant cites no authority in support of its assertion that federal question

jurisdiction on account of the trademark exists.

Plaintiff's petition asks for a permanent injunction and for a declaratory judgment based

on breach of contract. No damages are sought. The jurisdictional amount is, therefore, not

"facially apparent", that is, apparent from the allegations contained in the petition. See Simon v.

Wal-Mart Stores, Inc., 193 F.3d 848 (5th Cir. 1999). Compare Luckett supra, and Gebbia, supra.

Therefore, defendant must show by a preponderance of other evidence that the amount in dispute

is more than $75,000.

In an action in equity as this one primarily is, ascertaining actual damages presents some

difficulty. The value to the plaintiff of the rights he is seeking to protect is the measure of

---

[3]  Federal law provides that the party who brings suit is master of what law is invoked.
See The Fair v. Kohler Die & Specialty Co., 33 S. Ct. 410 (1913). The well-pleaded complaint
doctrine provides that federal question jurisdiction exists only when "there appears on the face of
the complaint some substantial disputed question of federal law."  See Carpenter v. Wichita Falls
Independent School District, 44 F.3d 362 (5th Cir. 1995).  Whether federal question jurisdiction
exists in a removed case is based on the allegations of plaintiff's "well-pleaded complaint."
Caterpillar, Inc. v. Williams, 107 S. Ct. 2425 (1987).  This rule requires that the federal question
be evident from the complaint and not arise from any defense the defendant might raise to defeat
the cause of action. Therefore, "even though a federal claim is available to a plaintiff, if a
plaintiff chooses not to assert that federal claim, then the defendant cannot remove the claim to
federal court on the basis of a possible asserted claim."  See Carpenter, supra.
         Jurisdiction of a federal court extends only to those cases in which a well-pleaded
complaint establishes either that a federal law created the cause of action,  or that the plaintiff's
right to relief necessarily depends on resolution of a substantial question of federal law.
Christianson v. Colt Indus., 108 S.Ct. 2166 (1988).
         There are exceptions to the well-pleaded complaint rule, none of which are applicable
here.

jurisdiction in equity cases, even though the value of that right may not be capable of exact valuation in money.  Premier Industrial Corp. V. Texas Industrial Fastener Co., 450 F.2d 444 (5th Cir. 1971). See also: Hunt v. Washington State Apple Adv. C., 97 S.Ct.2434 (1977); Garcia v. Koch Oil Company of Texas, Inc., 351 F.3d 636 (5th Cir. 2003). Costs or damages which are collateral to the true object of the litigation, however, should not be included in the computation of the amount in dispute. Garcia, supra.

In this case, the true object of the litigation is a declaratory judgment determining the parties' respective rights and obligations under the agreement  and a  mandatory injunction prohibiting the violation of that agreement.  The value of the claim, viewed from plaintiffs' perspective, is the value of protecting its rights to its name–a very nebulous and difficult thing on which to place a value.

In the removal petition, defendant claimed that, if plaintiff loses the case, it "could potentially lose its teams"  which it estimates at 2,500 and further estimates the value of that loss at $150,000. In brief, defendant relies on the affidavit of one Mr. Skelton, who defendants present as a CPA employed by an unnamed publicly traded company and who is also the National Commissioner of Dixie Youth. Skelton uses financial records of Dixie Boys to state to the court that revenues of Dixie Boys from Texas and Virginia have declined over 60% in 2011. He also attests that Dixie Boys has lost leagues in Texas which has resulted in fewer tournaments and a decline in tournament fees of over 50%.[4]

---

[4] Plaintiff contests defendant's right to use Dixie Boys financial data. It advises the court that, although Dixie Youth did have possession of some of its data at its offices pursuant to agreement, all such data belonged to Dixie Boys which  requested that it be returned to it after this dispute developed. Dixie Boys reasons that, since the information was used by Skelton in this case it was, apparently, not returned to Dixie Boys. Dixie Boys compellingly suggests that

The Skelton affidavit is flawed in several respects. First, it is made based on possession of certain records of Dixie Boys located in the Dixie Youth office but which do not belong to Dixie Youth and regarding which Skelton has not asserted that he has any personal knowledge. Even if  he is  custodian of the records in the normal course of Dixie Boys' business--a fact which is disputed by plaintiffs–he has not shown that he can attest to the correctness or accuracy of the data. Further, Skelton has not shown that he is qualified as an expert to interpret or manipulate the data, forecast future data trends or compute present or future value. Second, the affidavit is speculative in two respects: it assumes that Dixie Boys' alleged loss of revenues in 2011 was caused by Dixie Youth's actions, and  it assumes that the loss in 2011 will continue indefinitely into the future. There is no proof that Dixie Boys' losses, if any, were caused by the creation of  competing leagues or have anything whatsoever to do with the subject matter of this lawsuit nor is there proof that the alleged losses in 2011 will occur in any future years.

Although the petition for removal alleges that plaintiff "could potentially lose is teams" there has been no showing that that is probable or even possible. Because of plaintiff's unsupported allegations in its petition for removal concerning the jurisdictional amount and its failure to show in opposition to the motion to remand a plausible likelihood that the jurisdictional amount may exceed $75,000, this court will not permit an expensive fishing expedition via discovery to allow defendant to attempt to find evidence that the jurisdictional amount is met.[5]

---

Dixie Youth had no right to use the data without Dixie Boys' permission or by utilizing normal discovery procedures with court oversight. Dixie Boys seeks to strike the affidavit of Skelton. However, in view of my Order to Strike the affidavit on other grounds, it is not necessary for this court to delve into the propriety *vel non* of defendant's use of plaintiff's proprietary data.

[5]  District courts "must be mindful of the limitations placed on the frequency and extent of discovery under the federal rules, particularly Rule 26(b).  For instance, a district court must

The bottom line is that defendant, Dixie Youth, has failed to prove by a preponderance of the evidence that the amount in dispute in this suit exceeds the jurisdictional limits of this court.

For these reasons, the Motion to Strike the affidavit of Mr. Skelton is GRANTED.

Further,  IT IS RECOMMENDED that the motion to remand, doc. #9, be GRANTED and that this case be remanded to the 9th Judicial District Court, Parish of Rapides.

### OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection tot he magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT**

---

limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.' Fed. R. Civ. P. 26(b)(2)(C)(iii) . . ." Crosby v. Louisiana Health Service and Indem. Co., 647 F.3d 258 (5th Cir. 2011).

**JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 31st day of May, 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE